UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| STEPHEN AGUIAR, | :  Case No. 2:09-cr-00090 |
| WILLIAM MURRAY, | : |
| COREY WHITCOMB, | : |
| Defendants. | : |

### MEMORANDUM and ORDER

On April 11, 2011, a jury convicted Defendants Stephen Aguiar, William Murray and Corey Whitcomb of Count One of the Redacted Fourth Superseding Indictment, which charged them with conspiring to distribute cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1), 846.  The jury found that Murray's offense involved 500 grams or more of cocaine and that Aguiar's offense involved 5 kilograms or more of cocaine.  Aguiar was also found guilty of Counts Two, Three, Four, Five, Six and Seven, which alleged that he distributed cocaine on various dates.  Murray and Whitcomb have renewed the motions for judgments of acquittal that they made during the trial pursuant to Fed. R. Crim. P. 29.  ECF Nos. 499 & 500.  In the alternative, they move for a new trial pursuant to Fed. R. Crim. P. 33.  *Id*.  For the reasons that follow, the motions are **denied**.

### Legal Standards

On a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29, the Court must determine "whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Writers & Research*, 113 F.3d 8, 11 n.3 (2d Cir. 1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "All reasonable inferences are to be resolved in favor of the prosecution[.]"  *Id.* (internal quotations and citations omitted).  The Court must "consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence."  *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).

Under Fed. R. Crim. P. 33, a Court may grant a motion for a new trial "if the interest of justice so requires."  In evaluating such a motion, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation."  *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal citation omitted).  "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice."  *Id*.  In denying a Rule 33 motion, "the trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict." *Id.* (internal citation and quotation marks omitted).  To grant the motion, "[t]here must be a real concern that an innocent person may have been convicted."  *Id*.  The Court "must exercise

the Rule 33 authority sparingly and in the most extraordinary circumstances." *Id.*

### Whitcomb's Motion

"In order to convict a defendant of conspiracy, the government must prove both the existence of the conspiracy alleged and the defendant's membership in it beyond a reasonable doubt." *United States v. Chavez*, 549 F.3d 119, 125 (2d Cir. 2008). Whitcomb argues that, rather than establishing his membership in the conspiracy, the evidence adduced at trial suggests, at most, that he "engaged in a buyer-seller relationship . . . in which Aguiar sold and Whitcomb bought cocaine." Renewed R. 29 Mot. 2.

While it is true that, "[w]ithout more, the mere buyer-seller relationship is insufficient to establish a conspiracy[,]" *United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998) (citing *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989)), the Second Circuit has made clear that the so-called "buyer-seller exception" is a "narrow" one. *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009) (citing *United States v. Hawkins*, 547 F.3d 66, 71-72 (2d Cir. 2008)).[1] A fact-finder may conclude that the relationship

---

[1] The Second Circuit has explained the buyer-seller exception as follows: "[W]hile the illegal sale of narcotics is a substantive crime requiring an agreement by two or more persons, the sale agreement itself cannot be the conspiracy to distribute, for it has no separate criminal object." *United States v.*

3

between alleged coconspirators was not merely that of seller and buyer where "there [is] evidence from which [one] could infer (a) that the sellers shared with the buyers an interest and a stake in the buyers' intention to resell the drugs, and (b) that the buyers shared with their sellers an intention to be a continuing part of, and to further, the sellers' drug selling operation." *United States v. Parker*, 554 F.3d 230, 237-38 (2d Cir. 2009). Factors that suggest the existence of a conspiracy include repeat transactions and a relationship of mutual trust, as evidenced by the sale of drugs on credit. *Id*.

At trial, the Government introduced evidence of Whitcomb's membership in the conspiracy through the testimony of coconspirators Jessica Adcock and Lisa Foy, through phone records showing frequent contact between Whitcomb and Aguiar, and through wiretap recordings of telephone conversations between Whitcomb and Aguiar and between Aguiar and other members of the conspiracy.  The testimony of the coconspirators and the recorded conversations established that Whitcomb purchased cocaine from Aguiar on multiple occasions.  The recorded conversations in particular suggested that Aguiar and Whitcomb had the type of trusting and mutually dependent relationship that the *Parker*

---

*Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008) (internal quotation omitted).

court characterized as being indicative of a conspiracy rather than a mere buyer-seller relationship.

For example, based on the recordings, the jury could have reasonably concluded that Aguiar was allowing Whitcomb to purchase cocaine on credit. The conversations also indicated that Aguiar, who was having difficulty collecting debts from other distributors, depended heavily on Whitcomb's resale of cocaine as a means of generating income that Aguiar would then use to purchase more cocaine in bulk quantities. In turn, Whitcomb depended on Aguiar to provide him with a steady supply of cocaine to resell. He expressed frustration when Aguiar indicated that he would only able to sell him a half-ounce of cocaine on July 16, 2009 instead of the full ounce Whitcomb usually purchased. Aguiar also freely discussed with Whitcomb the problems he was having collecting debts from other distributors; seemingly concerned with the profitability of the conspiracy (which affected his own ability to obtain cocaine), Whitcomb advised Aguiar to temporarily withhold cocaine from these other conspirators in order to give them incentive to pay their debts. As further evidence that Whitcomb viewed himself as part of a larger business venture run by Aguiar, Foy testified that Whitcomb once remarked to her that, "your bank is my bank." She testified that she interpreted this to be a reference to the

fact that both she and Whitcomb were working for Aguiar as distributors.

Based upon this evidence, it was reasonable for the jury to find that Aguiar and Whitcomb, together with the other coconspirators, "had joined in a cooperative venture, in which both buyers and sellers had a stake in additional transfers of drugs beyond the transfers from the original seller to the original buyer."  *Parker*, 554 F.3d at 38.  The Court must therefore conclude both that a "rational trier of fact could have found the essential elements of conspiracy beyond a reasonable doubt" with regard to Whitcomb, *Jackson*, 443 U.S. at 319, and that "competent, satisfactory and sufficient evidence in the record supports the jury verdict."  *Ferguson*, 246 F.3d at 134.  Whitcomb's motion for judgment of acquittal or, in the alternative, for a new trial is **denied**.

<u>Murray's Motion</u>

Murray does not challenge the jury's verdict that he conspired to distribute cocaine and heroin, but instead argues that the Government failed to provide sufficient evidence to prove beyond a reasonable doubt that his offense involved 500 grams or more of cocaine.  A conspirator may be held criminally liable for a specific quantity of drugs either where he "directly and personally took part" in transactions involving that quantity or where the quantity of drugs distributed by his coconspirators

was "reasonably foreseeable" to him.  *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010) (citations omitted).

At trial, coconspirator Brian Tahair testified that he purchased cocaine from Murray once a week for four to six weeks in the fall of 2008.  He estimated that he bought between two and six ounces at a time, yielding a total somewhere between 224 and 1008 grams.[2]  Recorded phone calls introduced into evidence indicate that, in July 2009, Murray purchased approximately 14 grams of cocaine from Aguiar.  Murray argues that, because the Government's own evidence concerning his direct involvement in transactions yields such a wide range of possible quantities, which straddles the 500 gram quantity the Government sought to prove, a rational jury could not have concluded beyond a reasonable doubt that he was directly and personally involved in transactions involving more than 500 grams of cocaine.

The Government, in its post-trial briefing, fails to articulate any particular reasons why it would have been

---

[2] The Government indicates in its briefing that Tahair testified that he bought cocaine from Murray for five to six weeks (not four to six weeks), yielding a total of approximately 280 to 1008 grams.  Opp'n to R. 29 Mot. 7 n.2, ECF No. 503. Neither the Government nor the Defendants have ordered a transcript of the trial, so it is difficult for the Court to resolve this dispute as to what Tahair's testimony actually was. Nevertheless, whether one uses the Government's figures or the Defendant's, it is apparent that Tahair was unable to provide a precise estimate of the amount of cocaine he purchased from Murray and that the broad range he did provide allows for the possibility of quantities both above and below the 500 gram quantity the Government sought to prove.

reasonable for the jury to infer that the quantity of drugs involved in the transactions in which Murray directly partook was on the high end of the possible range as opposed to the low end. Nevertheless, the Government does convincingly argue that there was sufficient evidence for the jury to conclude that it was reasonably foreseeable to Murray that the overarching conspiracy involved 500 grams or more of cocaine.

Coconspirator Jessica Adcock testified that Murray, after "disappearing" at the end of 2008, reappeared in January 2009 and resumed his participation in the conspiracy as a drug distributor.  Toll records confirm that between January 2009, until the end of the conspiracy in July 2009, Murray and Aguiar were frequently communicating with one another.[3]  Coconspirator Lisa Foy also provided testimony from which the jury could have inferred that Murray was intimately involved in the conspiracy. She testified that, on one occasion, after customers complained about the quality of cocaine being distributed, Murray and Aguiar came to her apartment and "cooked" some of the cocaine to test its purity.

Recordings of telephone calls between Aguiar and Murray also strongly suggested that Murray was aware that the scope of the

---

[3] While Murray points out that much of the alleged  phone contact between Murray and Aguiar occurred on a phone registered to Murray's former girlfriend, Patti Niemann, the jury could have reasonably inferred that Murray was the one using the phone.

conspiracy involved more than 500 grams of cocaine.  In one particular conversation, Aguiar described his profit from 25 ounces, or 700 grams, of cocaine.  In another conversation, Murray guessed that Aguiar had saved $300,000 and encouraged him to keep distributing drugs so that he could someday become a millionaire.

Based upon this evidence, it was reasonable for the jury to find that it was reasonably foreseeable to Murray that the conspiracy of which he was a member involved 500 grams or more of cocaine.  Because there was sufficient evidence to convict Murray of conspiracy to distribute cocaine and heroin and to find that his offense involved 500 grams or more of cocaine, his motion for judgment of acquittal or, in the alternative, for a new trial is **denied**.

Dated at Burlington, in the District of Vermont, this 23rd day of June, 2011.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge
